**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| JOSE R. SOTO VILLANUEVA<br>JOCELINE ORTIZ POLACO<br>ERIC NIEVES LOPEZ<br>CARMEN MALDONADO<br><br>Plaintiffs<br><br>v.<br><br>LUNA CHICA, LLC.<br>ISLAND PORTFOLIO SERVICES, LLC.<br><br>Defendants | Civil No. 22-01417<br><br>Re: Willful Violation of the Discharge Injunction; Violation of the Fair Debt Consumer Protection Act; Actual and Punitive Damages |

## CLASS ACTION COMPLAINT

**COMES NOW,** Plaintiffs, **José R. Soto Villanueva and Joceline Ortiz Polaco, Plaintiff Eric Nieves, Plaintiff Carmen Maldonado** on behalf of themselves and pursuant to Rule 23 of the Federal Rules of Civil Procedure all others similarly situated (collectively, "Plaintiff" and/or "Plaintiffs"), through the undersigned counsel, and before this Honorable Court respectfully **STATES**, **ALLEGES** and **PRAYS** as follows:

### I.    INTRODUCTION

1.    This action seeks redress for the unlawful and deceptive practices committed by the Defendant in connection with its efforts to collect a debt, previously discharged in bankruptcy, against Plaintiffs and others similarly situated. Defendant, individually and/or collectively, engaged in unlawful and deceptive collection practices in violation of the Discharge Injunction and the Fair Debt Collection Practice Act ("FDCPA").

1

2.      The Plaintiffs request declaratory and injunctive relief, as well as monetary, and punitive and actual damages based on violations of 15 U.S.C. §1692.

## II.      <u>JURISDICTION AND VENUE</u>

3.      Jurisdiction is invoked under the provision 28 U.S.C. §1331 and 15 U.S.C. §1692(k)(d).

4.      Venue is proper in this District because all the events and omissions giving rise to the claims asserted in the Complaint occurred within this judicial district. In addition, Defendant does business in this District.

## III.      <u>THE PARTIES</u>

5.      Plaintiffs, **José R. Soto Villanueva and Joceline Ortiz Polaco**, are citizens of the Commonwealth of Puerto Rico, residing in the municipality of Canovanas, Puerto Rico (hereinafter, and collective, "Plaintiffs" and/or "Plaintiff Soto").  Plaintiffs are a "consumer" as such term is defined by the FDCPA.  Therefore, Plaintiffs Soto have standing to appear as "**Plaintiffs**" in this action.

6.      Plaintiff, **Eric Nieves Lopez** is a citizen of the Commonwealth of Puerto Rico, residing in the municipality of Bayamon, Puerto Rico (hereinafter, "Plaintiff" and/or "Plaintiff Nieves").  Plaintiff is a "consumer" as such term is defined by the FDCPA.  Therefore, Plaintiff Nieves has standing to appear as "**Plaintiffs**" in this action.

7.      Plaintiff, **Carmen Maldonado Delgado** is a citizen of the Commonwealth of Puerto Rico, residing in the municipality of Las Piedras, Puerto Rico (hereinafter, "Plaintiff" and/or "Plaintiff Maldonado").  Plaintiff is a "consumer" as such term is defined by the FDCPA. Therefore, Plaintiff Maldonado has standing to appear as "**Plaintiff**" in this action.

8.     Defendant, **LUNA CHICA, LLC.**   (hereinafter referred as "**LUNA**" or "**Defendant**") is a Limited Liability Company incorporated under the laws of the Commonwealth of Puerto Rico with a principal office address of:  Citi Tower, 252 Ponce De Leon Ave., Floor 20, San Juan, PR 00918.  Defendant is in the business of collecting consumer debts.  That is, one of the principal purposes of Defendant's business is the acquisition of defaulted consumer debts and the collection of those debts.  The business of debt collection is Defendant's only business; in other words, but for its debt collection business Defendant would cease to exist.  Defendant does not originate any debt of its own.  Defendant's business is conducted by and through the use of interstate communication such as US Mail, electronic communications (e-mails, electronic payments), and telephone communications.  As such, Defendant is a debt collector as such term is defined in 15 U.S.C. §1692a(6).

9.     Defendant, **ISLAND PORTFOLIO SERVICES, LLC.** (hereinafter referred as "**ISLAND**" or "**Defendant**") is a Limited Liability Company incorporated under the laws of the Commonwealth of Puerto Rico with the principal address of: 221 Plaza Building, Suite C-2, Ponce De Leon, PR 00918.  Defendant is in the business of collecting on consumer debts for itself and/or on behalf of others.  That is, Defendant regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.  Defendant's business is conducted by and through the uses of interstate communication such as US Mail, electronic communications (e-mails, electronic payments), and telephone communications.  As such, Defendant is a debt collector as such term is defined in 15 U.S.C. §1692a(6).

10.     Defendants, **Insurance Companies ABC**, are the insurance companies of the Defendant in this adversary proceeding who are liable for the acts against the Plaintiffs and are therefore responsible for the damages and acts alleged in this complaint.

11.     Defendants, **John Doe and Jane Doe,** are fictitious names for unknown persons who participated in the act and omissions against Plaintiffs and/or who are successors of Defendants, all responsible for the damages suffered by the Plaintiffs.

## IV.    THE FACTS

### a.  Facts as to Plaintiffs Jose R Soto and Joceline Ortiz Polaco

12.     Plaintiffs re-allege each and every previous allegation as if fully established herein.

13.     On October 29, 2016, Plaintiffs filed a voluntary petition under Chapter 13 of the Bankruptcy Code. *See,* Dk. #1 on the Bankruptcy case No. 16-08627-ESL13 (hereinafter referred to as the "Soto Bankruptcy Case").

14.     Banco Santander Puerto Rico (hereinafter referred as "Santander") received constructive and actual knowledge of Plaintiff's Bankruptcy petition.

15.     First, Santander was scheduled as a creditor holding in unsecured claim in Schedule E/F of the Voluntary Petition (hereinafter referred to as the "Bankruptcy Account").  *See*, Dk. #1 on Bankruptcy Case.

16.     Second, Santander received notice of Plaintiffs' Bankruptcy petition from the Clerk of the Bankruptcy Case.  *See*, Dk. #7, Certificate of Service, on the Bankruptcy Case, and see also, Proof of Claim #5.

17.     Third, on February 1, 2017, Santander filed Proof of Claim #5 confirming, in fact, actual and constructive knowledge of Debtor's Voluntary Petition.  *See*, Proof of Claim #5 on the Bankruptcy Case.

18.     During the pendency of the Bankruptcy Case, Santander did not file any proceedings to declare the Bankruptcy Account "non dischargeable" pursuant to 11 U.S.C. § 523 et seq.

19.    After all due procedural events, on October 18, 2021, the Bankruptcy Court entered the Discharge Order in the Bankruptcy Case (hereinafter referred as "Discharge Order"). *See,* Dk. #93 on the Bankruptcy Case.

20.    By operation of law, the Discharge Order activated the Discharge Injunction under Section 524 of the Bankruptcy Code which discharged the Debtor from the personal debt and obligation alleged in the Bankruptcy Account and/or Proof of Claim #5.  Accordingly, upon Discharge, Santander and/or its successors in interest, were required pursuant to 11 U.S.C. § 727 to stop any collection attempts against the Plaintiffs, directly or indirectly, on the Bankruptcy Account.

21.    The Discharge Order was notified publicly and privately.

22.    First, on October 20, 2021, the Clerk of the Bankruptcy Court filed a Certificate of Notice (the "Certificate of Service as to Discharge Order"). In the Certificate of Service as to Discharge Order Mr. Joseph Speetjens declared, under penalty of perjury, that a copy of the Order of Discharge was mailed to Santander.  *See,* Dk. #94 on the Bankruptcy Case.

23.    Second, the Discharge Order is a publicly available document that forms part of the documents, publicly available, related to the Soto Bankruptcy Case.

24.    Even after the Discharge Order issued by the Bankruptcy Court, and notwithstanding having actual and constructive knowledge of the Discharge Order and that the Bankruptcy Account had been discharged in the Bankruptcy Case, Luna Chica, LLC. (hereinafter referred as "Luna Chica") continued with collection efforts, as to the Bankruptcy Account, against the Plaintiffs by sending communications, as such term is defined by the FDCPA, attempting to collect on the now discharged Bankruptcy Account.

25.     In open contempt of the law and this Honorable Court's Discharge Order, on or about February 1, 2022, Defendant sent Plaintiffs a collection letter (hereinafter referred as the "Demand Letter") informing that Luna Chica acquired from Santander the Bankruptcy Account and demanded for the payments on the Bankruptcy Accounts.

26.     The Demand Letter informed the Plaintiffs that the Bankruptcy Account "remain in full force and effect and are now enforceable by the New Lender".

27.     The Demand Letter advised Plaintiffs that "[a]ll future payments of interest, principal, or other charges payable by you under the Personal Loan shall be made payable to the Servicer and shall be sent to the Servicer…"  The "Servicer" was identified as Defendant Island.

**b. <u>Facts as to Plaintiff Eric Nieves Lopez</u>**

28.     Plaintiffs re-allege each and every previous allegation as if fully established herein.

29.     On April 12, 2017, Plaintiffs filed a voluntary petition under Chapter 7 of the Bankruptcy Code. *See,* Dk. #1 on the Bankruptcy case No. 17-02550 (hereinafter referred to as the "Nives Bankruptcy Case").

30.     Banco Santander Puerto Rico (hereinafter referred as "Santander") received constructive and actual knowledge of Plaintiff's Bankruptcy petition.

31.     First, Santander was scheduled as a creditor holding in unsecured claim in Schedule E/F of the Voluntary Petition (hereinafter referred to as the "Bankruptcy Account").  *See*, Dk. #1 on Bankruptcy Case.

32.     Second, Santander received notice of Plaintiffs' Bankruptcy petition from the Clerk of the Bankruptcy Case.  *See*, Dk. #6, Certificate of Service, on the Bankruptcy Case.

33.     During the pendency of the Bankruptcy Case, Santander did not file any proceedings to declare the Bankruptcy Account "non dischargeable" pursuant to 11 U.S.C. § 523 et seq.

34.     After all due procedural events, on July 7, 2017, the Bankruptcy Court entered the Discharge Order in the Bankruptcy Case (hereinafter referred as "Discharge Order"). *See,* Dk. #22 on the Bankruptcy Case.

35.     By operation of law, the Discharge Order activated the Discharge Injunction under Section 524 of the Bankruptcy Code which discharged the Debtor from the personal debt and obligation alleged in the Bankruptcy Account.  Accordingly, upon Discharge, Santander and/or its successors in interest, were required pursuant to 11 U.S.C. § 727 to stop any collection attempts against the Plaintiffs, directly or indirectly, on the Bankruptcy Account.

36.     The Discharge Order was notified publicly and privately.

37.     First, on July 23, 2017, the Clerk of the Bankruptcy Court filed a Certificate of Notice (the "Certificate of Service as to Discharge Order"). In the Certificate of Service as to Discharge Order Mr. Joseph Speetjens declared, under penalty of perjury, that a copy of the Order of Discharge was mailed to Santander.  *See,* Dk. #24 on the Bankruptcy Case.

38.     Second, the Discharge Order is a publicly available document that forms part of the documents, publicly available, related to the Nieves Bankruptcy Case.

39.     Even after the Discharge Order issued by the Bankruptcy Court, and notwithstanding having actual and constructive knowledge of the Discharge Order and that the Bankruptcy Account had been discharged in the Bankruptcy Case, Luna Chica, LLC. (hereinafter referred as "Luna Chica") continued with collection efforts, as to the Bankruptcy Account, against

the Plaintiffs by sending communications, as such term is defined by the FDCPA, attempting to collect on the now discharged Bankruptcy Account.

40.    In open contempt of the law and this Honorable Court's Discharge Order, on or about February 1, 2022, Defendant sent Plaintiffs a collection letter (hereinafter referred as the "Demand Letter") informing that Luna Chica acquired from Santander the Bankruptcy Account and demanded for the payments on the Bankruptcy Accounts.

41.    The Demand Letter informed the Plaintiffs that the Bankruptcy Account "remain in full force and effect and are now enforceable by the New Lender".

42.    The Demand Letter advised Plaintiffs that "[a]ll future payments of interest, principal, or other charges payable by you under the Personal Loan shall be made payable to the Servicer and shall be sent to the Servicer…"  The "Servicer" was identified as Defendant Island.

### c.    <u>Facts as to Plaintiff Carmen Milagros Maldonado Delgado</u>

43.    Plaintiffs re-allege each and every previous allegation as if fully established herein.

44.    On August 2, 2019, Plaintiffs filed a voluntary petition under Chapter 13 of the Bankruptcy Code. *See,* Dk. #1 on the Bankruptcy case No. 19-04425 (hereinafter referred to as the "Maldonado Bankruptcy Case").

45.    Banco Santander Puerto Rico (hereinafter referred as "Santander") received constructive and actual knowledge of Plaintiff's Bankruptcy petition.

46.    First, Santander was scheduled as a creditor holding in unsecured claim in Schedule E/F of the Voluntary Petition (hereinafter referred to as the "Bankruptcy Account").  *See*, Dk. #1 on Bankruptcy Case.

47.    Second, Santander received notice of Plaintiffs' Bankruptcy petition from the Clerk of the Bankruptcy Case.  *See*, Dk. #8, Certificate of Service, on the Bankruptcy Case, and see also, Proof of Claim #5.

48.    Third, on September 4, 2019, Santander filed Proof of Claims #1 and #2 confirming, in fact, actual and constructive knowledge of Debtor's Voluntary Petition.  *See*, Proof of Claims #1 and #2 on the Bankruptcy Case.

49.    During the pendency of the Bankruptcy Case, Santander did not file any proceedings to declare the Bankruptcy Account "non dischargeable" pursuant to 11 U.S.C. § 523 et seq.

50.    After all due procedural events, on August 24, 2021, the Bankruptcy Court entered the Discharge Order in the Bankruptcy Case (hereinafter referred as "Discharge Order"). *See,* Dk. #44 on the Bankruptcy Case.

51.    By operation of law, the Discharge Order activated the Discharge Injunction under Section 524 of the Bankruptcy Code which discharged the Debtor from the personal debt and obligation alleged in the Bankruptcy Account and/or Proof of Claims #1 and #2.  Accordingly, upon Discharge, Santander and/or its successors in interest, were required pursuant to 11 U.S.C. § 727 to stop any collection attempts the Plaintiffs, directly or indirectly, on the Bankruptcy Account.

52.    The Discharge Order was notified publicly and privately.

53.    First, on August 26, 2021, the Clerk of the Bankruptcy Court filed a Certificate of Notice (the "Certificate of Service as to Discharge Order"). In the Certificate of Service as to Discharge Order Mr. Joseph Speetjens declared, under penalty of perjury, that a copy of the Order of Discharge was mailed to Santander.  *See,* Dk. #46 on the Bankruptcy Case.

54.     Second, the Discharge Order is a publicly available document that forms part of the documents, publicly available, related to the Maldonado Bankruptcy Case.

55.     Even after the Discharge Order issued by the Bankruptcy Court, and notwithstanding having actual and constructive knowledge of the Discharge Order and that the Bankruptcy Account had been discharged in the Bankruptcy Case, Luna continued with collection efforts, as to the Bankruptcy Account, against the Plaintiffs by sending communications, as such term is defined by the FDCPA, attempting to collect on the now discharged Bankruptcy Account.

56.     In open contempt of the law and this Honorable Court's Discharge Order, on or about February 1, 2022, Defendant sent Plaintiffs a collection letter (hereinafter referred as the "Demand Letter") informing that Luna acquired from Santander the Bankruptcy Account and demanded for the payments on the Bankruptcy Accounts.

57.     The Demand Letter informed the Plaintiffs that the Bankruptcy Account "remain in full force and effect and are now enforceable by the New Lender".

58.     The Demand Letter advised Plaintiffs that "[a]ll future payments of interest, principal, or other charges payable by you under the Personal Loan shall be made payable to the Servicer and shall be sent to the Servicer…"  The "Servicer" was identified as Defendant Island.

### d. **Allegations as to the Applicability of the FDCPA.**

59.     The FDCPA defines the term "debt collector" as including: (1) "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts," and (2) any person "who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due to another." *See*, 15 U.S.C. §1692a(6).

60.    The Plaintiff is a natural person allegedly obligated to pay a debt; he is an individual and otherwise a 'Consumer' as such term is defined by 15 U.S.C. §1692a(3).

61.    The Debt is a "debt" as defined by 15 U.S.C. §1692a(5) as it was incurred for personal, family, or household purposes.

62.    Defendant Luna and Defendant Island are legal persons who regularly use means of interstate commerce such as US Mail, telephone calls, internet, e-mails, text messages, amongst others, to engage and conduct their business of debt collection.

63.    Defendant Luna is in the business of purchasing and collecting on defaulted consumer loans.  The principal purpose of Defendant Luna's business is the collection of any debts. In fact, Defendant Luna does not originate and/or generate any of its own loans; rather, the principal purpose of Defendant Luna's business is the collection of defaulted debts which it has acquired.

64.    The Bankruptcy Accounts which are the object of this Complaint, to wit, the Bankruptcy Account of Plaintiff Soto, the Bankruptcy Account of Plaintiff Nieves, and the Bankruptcy Account of Plaintiff Maldonado, were all discharged (i.e., defaulted) debts.

65.    Defendant Island is in the business of debt collection, to wit, Defendant Island is a legal person "who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due to another."

66.    The Bankruptcy Accounts which are the object of this Complaint, to wit, the Bankruptcy Account of Plaintiff Soto, the Bankruptcy Account of Plaintiff Nieves, and the Bankruptcy Account of Plaintiff Maldonado, were – allegedly – owed to Defendant Luna but were Defendant Island acted as a debt collector on behalf of Defendant Luna.

67.    Defendant Luna and Defendant Island are "debt collectors" under the FDCPA, 15 U.S.C. § 1692(a)(6).

68.    The February 1, 2022 debt collection letter sent by Defendants to Plaintiff Soto, Plaintiff Nives, and Plaintiff Maldonado (collectively, all February 1, 2022 Letters are referred hereinafter, as the "February 1 2022 Letter"), were the "Initial Communication" as such term is defined under the FDCPA.

69.    The February 1, 2022 Letter was a "communication" as such term is defined under the FDCPA.  In other words, the February 1 2022 Letters conveyed information regarding a debt.  *See*, *e.g*., Hart v. FCI Lenders Services, Inc., 2015 WL 4745349 (2ND. Cir. 2015)(a transfer-of-servicing letter is a "communication" under the FDCPA); *see also*, Baptiste v. Carrington, 2017 U.S. Dist. Lexis 103609 (E.D.N.Y. 2017)(a Notice of Transfer of Servicing, constitutes a "communication" in connection with the collection of a debt).

## V.    COUNT I – VIOLATION OF 15 U.S.C. §1692e

70.    Plaintiff re-alleges each and every previous allegation as if fully established herein.

71.    Plaintiff brings Count IV on her own behalf and on behalf of others similarly situated.

72. *15 U.S.C. § 1692e(11)* provides as follows:

> A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt.  Without limiting the general application of the foregoing, the following conduct is a violation of this section:
> …
> (11)    The failure to disclose in the initial written communication with the consumer and, in addition, if the initial communication with the consumer is oral, in that initial oral communication, that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose, and the failure to disclose in subsequent communications that        the communication is        from

a debt collector, except that this paragraph shall not apply to a formal pleading made in connection with a legal action.

*See,* 15 U.S.C. § 1692e(11).

73.    Section 1692e(11) incorporate two separate and distinct mandates upon debt collectors. First, in the "***initial communication***" the debt collector must disclose that: (a) the communicating party is a "debt collector," and (b) the communicating party "is attempting to collect a debt and that any information will be used for that purpose". *See*, 15 U.S.C. § 1692e(11), *supra*. Second, in any "***subsequent communications***" the debt collector must disclose that the "communication is from a debt collector". Id.

74.    The FDCPA mandates strict compliance with its disclosure requirements of 1692e(11). *See*, <u>Masciarelli v. Boudreau & Associates</u>, 529 F.Supp.2d 183 (D. Mass. 2007) ("a collection agent must follow the disclosure requirement of identifying himself as a debt collector in all communication...").

75.    Pursuant to the mandates of 1692e(11) of the FDCPA, in the February 1 Letter, Defendant Luna and Defendant Island were obligated to disclose to Plaintiffs, clearly and effectively, that it was a "debt collector."

76.    The February 1 Letter was the "Initial Communication" as such term is defined by the FDCPA.  See, **<u>Exhibit A</u>**.

77.    The February 1 Letter, i.e., the "Initial Communication," failed to disclose to Plaintiff the purpose and/or that Defendants were acting as "debt collector" seeking to "collect on a debt."

78.    Defendant's failure to clearly and effectively convey its identity as a "debt collector" violated Section 1692e(11).

79.     As a result of Defendants violation of Section 1692e(11) Plaintiffs were not advised, as is required by law, that they were entitled to dispute the debt.

80.     Because of Defendants' violation of Section 1692e(11), Plaintiffs did not dispute a debt which he did not owe.

81.     As a result of Defendants' violation of Section 1692e(11), Plaintiffs suffered tangible and intangible injuries.

82.     Amongst Plaintiffs' tangible injuries: (b) Plaintiffs suffered economic harm by and through having to obtained legal representation to provide legal advice as to the February 1 Letter, something which would not have been required had Defendants accurately provided Plaintiffs with the disclosure required by Section 1692e(11) of the FDCPA, and (b) Plaintiff suffered severe emotional harm that resulted from learning from being informed about the alleged debt, without the concurrent disclosure that such allegations could be disputed.

83.     But for Defendants failure to comply with Section 1692e(11), Plaintiff would have known that the alleged debts were subject to dispute.

84.     Additionally, Plaintiff suffered intangible injuries.  Amongst others, the confusion and contradiction created by misinformation provided by Defendants in the debt collection process.

85.     Congress mandated that the Section 1692e(11) information be conveyed with the Initial Communication, so Plaintiffs would understand from the outset the adversarial relationship of the debt collector and thus preserve in time Plaintiff's debt validation rights.

86.     Defendants' failure to advise Plaintiffs that they were acting as a debt collector, violated Section 1692e(11).

87.     As a result of CICA's conduct, Plaintiff is entitled to an award of statutory damages pursuant to *15 U.S.C. §1692k*.

88.     As a result of CICA's conduct, Plaintiff is entitled to an award of costs and attorney fees pursuant to *15 U.S.C. §1692k*.

## VI.    <u>COUNT II – VIOLATION OF SECTION 1692g.</u>

89.     Plaintiff re-alleges each and every previous allegation as if fully established herein.

90.     Plaintiff brings Count II on his own behalf and on behalf of others similarly situated.

91.     Section 1692g expressly requires all debt collectors to communicate certain information to every consumer.  Pursuant to *15 U.S.C §1692g(a)* the Defendant must provide Plaintiff, amongst others, with the following information:

(a)  Notice of debt; contents

Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing-

(2) The name of the creditor to whom the debt is owed;

(3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;

(4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, **is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification** or judgment will be mailed to the consumers by the debt collector;

*See, 15 U.S.C §1692g(a)* (Emphasis added).

92.    The Section 1692g(a) language, "commonly referred to as a 'validation notice,' gives the consumer the information necessary to challenge the debt allegedly owed before making payment." *See*, Russell v. Equifax A.R.S., 74 F.3d 30, 32-33 (2d Cir. 1996).

93.    It is settled that the "[Seventh] and other circuits have long interpreted *§1692g* to require that the mandatory disclosures be made so that they would be clearly understood by unsophisticated debtors." *See*, Steffek v. Client Servs., Inc. 948 F.3d 761 (7th Cir. 2020).

94.    Accordingly, "[i]t is not enough for a debt collection agency simply to include the property debt validation notice in a mailing to a consumer [rather] Congress intended that such notice be clearly conveyed." *See*, Graziano v. Harrison, 950 F.2d 107, 111 (3rd Cir. 1991).

95.    A letter in the form represented by **Exhibit A** was the 'initial communication' utilized by Defendant (hereinafter, the "Initial Communication").

96.    The Initial Communication is a template and a form letter which - in identical form and substance - is mailed to all consumers from whom Defendant attempts to collect as an 'initial communication.'

97.    Pursuant to the mandates of 1692g(a)(2) of the FDCPA, Defendant's Initial Communication is obligated to clearly convey to Plaintiff "[t]he name of the creditor to whom the debt is owed."

98.    Pursuant to the mandates of 1692g(a)(3) of the FDCPA, Defendant's Initial Communication was obligated to clearly convey to Plaintiff that Plaintiff had the right to dispute the validity of the debt during the period commencing on the date of receipt of the Initial Communication and ending on the 30th day thereafter.

99.     Pursuant to the mandates of 1692g(a)(4) of the FDCPA, Defendant's Initial Communication was obligated to clearly convey to Plaintiffs that the period to dispute the debt, under 1692g(a)(4), expired on the 30th day **after receipt** of the Initial Communication.

100.    Defendant's Initial Communication, i.e., the February 1 Letter, failed to clearly convey to Plaintiff the disclosures required by 1692g(a)(1), 1692g(a)(2), 1692g(a)(3), or 1692g(a)(4) of the FDCPA.

101.    The Initial Communication violated 15 U.S.C. §§§§ 1692g(a)(1), 1692g(a)(2); 1692g(a)(3); and 1692g(a)(4), respectively.

102.    The result of Defendants' violation of Section 1692g, lead Plaintiffs to mistakenly believe that he could not dispute the debt without the assistance of counsel.

103.    As a result of Defendants violation of Section 1692g, Plaintiffs suffered tangible and intangible injuries.

104.    Amongst Plaintiffs tangible injuries: (a) Plaintiffs suffered severe emotional harm that resulted from Plaintiffs' belief that they would need to pay for debts without first having the opportunity to dispute and confirm such debts; and (b) Plaintiffs suffered economic harm in the cost of time and money invested researching how to avoid the impending legal and economic consequences that would result from the failure to pay the debts demanded on the February 1 Letter.

105.    But for the failure of Defendants to comply with Section 1692g, Plaintiffs would have known that the debt alleged in the February 1 Letter could be disputed via a simple expression, thus, saving themselves the severe emotional distress as well as the economic harm of researching and investigating alternatives.

106.    Additionally, Plaintiffs suffered intangible injuries.  Amongst others, the confusion created by Defendants' failure to comply with Section 1692g exposed Plaintiffs to the risk of having to pay a debt without having the opportunity to disputes the same; precisely, the type of harm Congress intended to prevent via the FDCPA.

107.    As a result of Defendants' conduct, Plaintiffs are entitled to an award of statutory damages pursuant to *15 U.S.C. §1692k*.

108.    As a result of Defendants' conduct, Plaintiffs are entitled to an award of costs and attorney fees pursuant to *15 U.S.C. §1692k*.

## VII.    CLASS ALLEGATIONS AS TO COUNTS I AND II

109.    Plaintiffs re-allege each previous allegation as if fully established herein.

110.    Plaintiffs bring Count I and Count II of this action on behalf of themselves and on behalf of a class of all other persons similarly situated pursuant to Fed. R. Civ. P. 23.

111.    The Class consists of: (a) all natural persons; (b) who have received a Letter from Defendant Luna and/or Defendant Island similar in form and content to the Letter attached hereto as **Exhibit A**; (c) where such Letter constituted the Initial Communication, and (d) where such Letter was mailed any time after September 1, 2021.

112.    This action has been brought as a class action pursuant to the provisions of Rule 23 of the Federal Rules of Civil Procedure and as such complies with the following:

  i.    The class members are so numerous that joinder is impracticable;

  ii.    On information and belief, based on preliminary discovery, there are more than 1000 members of the class as defined herein;

iii.  There are questions of law and facts common to all class members, which predominate over any question that affect only individual class members. The predominant questions are:

    a.  Whether Defendant Luna and Defendant Island Chica conduct, described herein, violated Sections 1692e and Section 1692g of the FDCPA; and

    b.  The liability of Defendant Luna and Defendant Island for the alleged violations of the FDCPA which are described herein;

    c.  Whether the February 1 Letter is a form letter.

    d.  Whether the February 1 Letter violates the FDCPA; and

    e.  The liability of Defendant Luna and Defendant Island for the action of sending the February 1 Letter.

iv.  Plaintiffs' claims are typical of the claims of the class members.  All are based on the same factual and legal theories; to wit, all plaintiffs received the same identical letter and based on the same identical legal theories allege identical violations of the FDCPA;

v.  Plaintiffs will fairly and adequately represent and protect the interests of each class member.  Plaintiffs have retained counsel experienced in consumer bankruptcy matters, consumer credit matters, and debt collection abuse cases.

vi.  A class action is superior to other alternative methods of adjudicating this dispute, in that:

    a.  Individual cases are not economically feasible,

b.  Many consumers may not realize their rights are violated, and

c.  Congress prescribed class actions as a principal enforcement mechanism under the FDCPA.

## VIII.   COUNT III – VIOLATION OF *15 U.S.C. § 1692e(2), (10)*

113.    Plaintiffs re-allege each and every previous allegation as if fully established herein.

114.    Plaintiffs bring Count III on their own behalf and on behalf of others similarly situated.

115.    Section 1692e, in its pertinent part, states:

A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt.  Without limiting the general application of the foregoing, the following conduct is a violation of this section:

A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt.  Without limiting the general application of the foregoing, the following conduct is a violation of this section:
…
(2) The false representation of—
    (A) **the character, amount, or legal status of any debt**…
(3) …………………………………………………………...;
(4) …………………………………………………………...;
(5) …………………………………………………………;
(6) …………………………………………………………...;
(7) …………………………………………………………...;
(8) …………………………………………………………...;
(9) …………………………………………………………...;
(10) The **use of any false representation** or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

116.    Under Section 1692e, a debt collector may not falsely represent "the character, amount, or legal status of any debt".

117.    Section 1692e also prohibits the "use [of] any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer". 15 U.S.C. §§ 1692e(10).

118.    "The FDCPA is 'a strict liability statue' and, thus, there is no need for a plaintiff to plead or prove that a debt collector's misrepresentation of a debt obligation was intentional." *See*, Vangorden v. Second Round, Ltd. P'ship, 897 F.3d 433, 437-38(2d Cir. 2018) (citing Arias v. Gutman, Mintz, Baker & Sonnenfeldt LLP, 875 F.3d 128, 134 (2d Cir. 2017)). "The strict liability standard applies to § 1692e claims." See, Wahl v. Midland Credit Mgmt., Inc., 556 F.3d 643, 646 (7th Cir. 2009).

119.    Therefore, a "[d]ebt collectors may not make false claims, period." *See*, Randolph v. IMBS, Inc., 368 F.3d 726, 730 (7th Cir. 2004); see also, Valle v. Westhill Exch., LLC, GJH-19-2304 (D. Md. Mar. 24, 2021) ("[A] debt collector may violate §1692e even if it unintentionally makes a false statement."); Turner v. J.V.D.B. & Assocs., Inc., 330 F.3d 991, 995 (7th Cir 2003) ("[U]nder §1692e ignorance is no excuse."); Russell v. Equifax A.R.S., 74 F.3d 30, 33 (2d Cir. 1996).

120.    The February 1 Letter's allegation, as to the Bankruptcy Accounts, that "[a]ll of the terms and conditions of the account remain in full force and effect and now are enforceable by the New Lender", was false because due to the Discharge provisions of the Bankruptcy Code, collection of the now discharged Bankruptcy Accounts of Plaintiff Soto, Plaintiff Nieves, and/or Plaintiff Maldonado was prohibited.

121.    Similarly, the February 1 Letters advised to Plaintiffs that "[a]ll future payments of interest, principal, or other charges payable by you under the Personal Loan shall be made payable to the Servicer and shall be sent to the Servicer…" was also false because, due to the

Discharge Order neither Plaintiff Soto, Plaintiff Nieves, nor Plaintiff Maldonado owed any monies nor were any of the Plaintiffs obligated to make any payments.

122.    Defendants violated Section 1692e(2)(A) because it incorporated a false representation and a mischaracterization of the nature and legal status of the pre-petition debt by attempting to collect from Plaintiffs a debt that was Discharged on the Bankruptcy Case; thus, was neither due nor owing nor demandable.

123.    Defendants false, misleading, and deceptive representations in the February 1 Letter also violated 15 U.S.C. § 1692e(10).

124.    Defendants violated Section 1692e(10) by using false representations and/or deceptive means to collect, or attempt to collect, the Consumer Debt. Specifically, Defendant falsely represented in the February 1 Letter, amongst others, that: (a) the terms and conditions of the now discharged Bankruptcy Account were "in full force and effect;" (b) that the now discharged Bankruptcy Account was "now enforceable;" (c) that all future payments of interest, principal or other charges were "payable by under the Personal Loan shall be made to the Servicer."

125.    The result of Defendant Luna's violation of Section 1692e, lead Plaintiffs to mistakenly believe that they needed to pay the now discharged Bankruptcy Account.

126.    As a result of Defendants violation of Section 1692e, Plaintiffs suffered tangible and intangible injuries.

127.    Amongst Plaintiffs' tangible injuries, Plaintiffs: (a) spent time and money to engage counsel and to review the allegations in the collection letter; (b) opportunity costs related to time missed from work due to the allegations in the collection letter; (c) severe emotional harm that resulted from Plaintiffs' belief that notwithstanding their investment in counsel and bankruptcy

filing, they were still subject to the impending financial and legal harm threatened in the collection letters; as well as (d) as physical ailments like headaches, and others resulting from the allegations in the Demand Letter.

128.    Additionally, Plaintiffs suffered intangible injuries. Amongst others, the collection letters, in violation of the FDCPA, exposed Plaintiffs to the risk of paying a debt which they did not owe; precisely, the type of harm Congress intended to prevent via the FDCPA.

129.    As a result of Defendants' conduct, Plaintiffs are entitled to an award of statutory damages pursuant to 15 U.S.C. §1692k.

130.    As a result of Defendants' conduct, Plaintiffs are entitled to an award of costs and attorney fees pursuant to 15 U.S.C. §1692k.

## IX.    CLASS ALLEGATIONS AS TO COUNT III

131.    Plaintiffs re-allege each previous allegation as if fully established herein.

132.    Plaintiffs bring Count III on behalf of themselves and on behalf of a class of all other persons similarly situated pursuant to Fed. R. Civ. P. 23.

133.    The Class consists of: (a) all natural persons; (b) who filed a bankruptcy case in the Bankruptcy Court for the District of Puerto Rico; (c) in which a debt later acquired by Defendant Luna was discharged by a Discharge Order entered by the Bankruptcy Court; (d) in which Defendant Lune bought the discharged debt; and (e) where a Letter, in the form and content similar to the letter attached hereto as Exhibit A, was mailed following the Discharge Order.

134.    This action has been brought as a class action pursuant to the provisions of Rule 23 of the Federal Rules of Civil Procedure and as such complies with the following:

j.      The class members are so numerous that joinder is impracticable;

vii.    On information and belief, based on preliminary discovery, there are more than 200 members of the class as defined herein;

viii.    There are questions of law and facts common to all class members, which predominate over any question that affect only individual class members. The predominant questions are:

    a.   Whether Defendant' s Luna conduct, as described herein, violated Section 1692e of the FDCPA, and

    b.   The liability of Defendant Luna for the alleged violations of the FDCPA described herein.

    c.   Whether the February 1 Letter is a form letter.

    d.   Whether the February 1 Letter violated the FDCPA; and

    e.   The liability of Defendant Luna for the action of sending the February 1 Letter.

ix.    Plaintiffs' claims are typical of the claims of the class members.  All are based on the same factual and legal theories.

x.    Plaintiffs will fairly and adequately represent and protect the interests of each class member.  Plaintiffs have retained counsel experienced in consumer bankruptcy matters, consumer credit matters, and debt collection abuse cases.

xi.    A class action is superior to other alternative methods of adjudicating this dispute, in that:

    a.   Individual cases are not economically feasible,

    b.   Many consumers may not realize their rights are violated, and

c.  Congress prescribed class actions as a principal enforcement mechanism under the FDCPA.

**X.      COUNT IV - VIOLATIONS OF THE DISCHARGE INJUNCTION AND CIVIL CONTEMPT**

135.    Plaintiffs re-allege each and every previous allegation as if fully established herein.

136.    11 U.S.C. § 524(a)(2) provides that:

[A discharge in a case under this title—] operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived.

137.    In Taggart v. Lorenzen, the Supreme Court entered a unanimous opinion as to the legal standard for holding a creditor in civil contempt when it violated a discharge order. Specifically, the Supreme Court ruled that "a court may hold a creditor in civil contempt for violating a discharge order if there is not a fair ground of doubt as to whether the creditor's conduct might be lawful under the discharge order". Taggart v. Lorenzen, 139 S. Ct. 1795 (2019).

138.    In Bessette v. Avco Financial, 230 F.3d 439 (1st Cir. 2000), Judge Torruellas, writing for the First Circuit, held that a federal court, such as this District Court, has standing to adjudicate a violation of Discharge Order contempt, as a civil action and/or as a class action. *See*, Bassette, *supra*.

139.    Notwithstanding actual and constructive notice of the Discharge Order, Defendants acted in defiance of the Discharge Order by continuing its collection efforts against Plaintiffs over their respective Bankruptcy Accounts.

140.    The Discharge Order Notice mailed to all creditors, including Defendant, included the following warning: "**This order means that no one may make any attempt to collect a discharged debt from the debtors personally**. For example, creditors cannot sue, garnish wages,

assert a deficiency, or otherwise try to collect from the debtors personally on discharged debts. Creditors cannot contact the debtors by mail, phone, or otherwise in any attempt to collect the debt personally. **Creditors who violate this order can be required to pay debtors damages and attorney's fees**". *(Our Emphasis Added).*

141.    Amongst others, but more specifically, after the Discharge Order, and notwithstanding actual and constructive notice of the Discharge Order, Defendant sent the February 1 Letter to the Plaintiffs demanding that payments on the now discharged Bankruptcy Accounts.

142.    The February 1 Letter informed Plaintiffs that the now discharged Bankruptcy Accounts "remain[ed] in full force and effect and are now enforceable by the New Lender".

143.    The February 1 Letter advised Plaintiffs that "[a]ll future payments of interest, principal, or other charges payable by you under the Personal Loan shall be made payable to the Servicer and shall be sent to the Servicer…"

144.    Amongst others, but more specifically, after the Discharge Order, and notwithstanding actual and constructive notice of the Discharge Order, Defendant continued its collection efforts against Plaintiffs for the discharged debt by buying the Bankruptcy Accounts from Santander with premeditation and intent of seeking to collect on discharged debts.

145.    Upon reason and belief, it is part of Defendants pattern and practice to purchase debts, at steep discounts, which have been discharged by a Bankruptcy Court Discharge Order in order to collect on such discharged debts.

146.    This pattern and practice is part of Defendants' business model to maximize profits at the expense of former Debtors' right to a fresh start.

147.    Prior to sending the February 1 Letter, Defendant conducted a "bankruptcy scrub" or other similar search to identify if the Bankruptcy Accounts were subject to or the object of a pending or prior bankruptcy.

148.    As a result of such bankruptcy scrub, or similar search, Defendant had actual and constructive knowledge of the bankruptcy petition and had actual and constructive knowledge of the Discharge Order in the respective cases of the Plaintiffs.

149.    Because Defendant had actual and constructive knowledge, Defendant acted in defiance with premeditation, willfulness, and malice with respect to the Discharge Order.

150.    These acts, after the Discharge Order was issued, constitutes an outrageous disregard to Plaintiffs' "fresh start;" which is the basic promise of the Bankruptcy Code to an honest but unfortunate Debtor who achieves an Order of Discharge under the provision of the Bankruptcy Code. The actions perpetrated by the Defendant, its employee(s), agent(s), representative(s), legal or otherwise, are clear and willful violation of the Bankruptcy Code and the Discharge Order issued by the Bankruptcy Honorable Court.

151.    The Defendant's conduct in this case has gravely frustrated the Discharge Order entered by the Bankruptcy Court and has caused the Plaintiffs unwarranted and unnecessary losses of time, efforts, and expenses in seeking to enforce the "fresh start" rights guaranteed by the Bankruptcy Code.

152.    Defendants' behavior after the Discharge Order went into effect has been intentional, egregious and extreme.

153.    The aforementioned acts perpetrated by Defendants, caused the Plaintiffs to be afraid and fearful of the next possible act to be committed by the Defendants against them.

154.    As a direct and proximate cause of the aforementioned acts perpetrated by Defendants, Plaintiffs have suffered damages in the form of tension, headaches, chest pain, upset stomach, shortness of breath, anxiety, upset stomach, severe emotional suffering, mental anguish and other physical and psychological injuries all caused by the deliberate disruption of Plaintiffs' financial rehabilitation efforts.

155.    As a result of Defendant's conduct, Plaintiffs are entitled to an award of costs and attorney fees.

156.    As a result of Defendant's conduct, Plaintiffs are entitled to an award of actual damages, including physical damages, economic losses, emotional suffering, mental anguish and the deliberate disruption of Plaintiffs' financial rehabilitation efforts.

157.    Defendant's intentional and deliberate actions were intentional or, at a minimum, in reckless disregard of the Honorable Bankruptcy Court's orders, namely the Discharge Order, for which punitive damages are warranted.

158.    In addition, Defendants are responsible for Plaintiff's attorney fees, costs, and expenses.

## XI.    CLASS ALLEGATIONS AS TO COUNT IV

159.    Plaintiffs re-allege each previous allegation as if fully established herein.

160.    Plaintiffs bring this action on behalf of themselves and on behalf of a class of all other persons similarly situated pursuant to Fed. R. Civ. P. 23.

161.    The Class consists of: (a) all natural persons; (b) who filed a bankruptcy case in the Bankruptcy Court for the District of Puerto Rico, noticed Santander of such case, and listed Santander as the holder of a claim; (c) where such listed claim was discharged by a Discharge Order entered by the Bankruptcy Court; (d) in which Defendant bought the discharged debt from

Santander, and (e) in which Defendant attempted to collect form Plaintiffs via a form letter similar in form and contact to the letter attached as **Exhibit A**.

162.     This action has been brought as a class action pursuant to the provisions of Rule 23 of the Federal Rules of Civil Procedure and as such complies with the following:

k.     The class members are so numerous that joinder is impracticable;

xii.     On information and belief, based on preliminary discovery, there are more than 200 members of the class as defined herein;

xiii.     There are questions of law and facts common to all class members, which predominate over any question that affect only individual class members. The predominant questions are:

a.     Whether Defendant Luna, and the conduct described herein, violated the Discharge Injunction pursuant to 11 U.S.C. § 524(a); and

b.     The liability of Defendant Luna for the alleged violations of the Discharge Injunction described herein.

c.     Whether the February 1 Letter is a form letter; and

d.     The liability of Defendant Luna Chica for the action of sending the February 1 Letter.

xiv.     Plaintiffs' claims are typical of the claims of the class members.  All are based on the same factual and legal theories.

xv.     Plaintiffs will fairly and adequate represent and protect the interests of each class member.  Plaintiffs have retained counsel experienced in consumer bankruptcy matters, consumer credit matters, and debt collection abuse cases.

       xvi.    A class action is superior to other alternative methods of adjudicating this dispute, in that:

          a.  Individual cases are not economically feasible, and

          b.  Many consumers may not realize their rights are violated, and

**WHEREFORE**, in view of the foregoing, Plaintiffs respectfully request from this Honorable Court to enter a judgment in favor of the Plaintiffs and the class members, granting Plaintiffs and the class members the remedies requested in this Complaint and such other remedies as may be fair and equitable.

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico this 31st day of August 2022.

                                    **THE BATISTA LAW GROUP, PSC.**
P.O. Box 191059
San Juan, PR. 00919
Telephone: (787) 620-2856
Facsimile: (787) 777-1589

/s/ Jesus E. Batista Sánchez
Jesus E. Batista Sánchez, Esq.
USDC-PR No. 227014
E-mail:  jeb@batistasanchez.com

/s/ William Rivera Vélez
William Rivera Vélez, Esq.
USDC-PR No. 229408
E-mail:  wrv@batistasanchez.com

/s/ Carlos A. Ortiz Morales
Carlos A. Ortiz Morales, Esq.
USDC-PR No. 120402
E-mail: comlaw@gmail.com